## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BRENDA GEIGER, CLAUDIA SAMPEDRO, IESHA MARIE CRESPO, ROSA ACOSTA, ZELIA MILAN and YODIT YEMANE a/k/a JODIE JOE<br><br>Plaintiffs,<br><br>- against -<br><br>PURE PASSION INC. SPORTS BAR d/b/a PURE PASSION and RANDY WILLIAMS,<br><br>Defendants. | Case No. |

Plaintiffs BRENDA GEIGER, CLAUDIA SAMPEDRO, IESHA MARIE CRESPO, ROSA ACOSTA, ZELIA MILAN and YODIT YEMANE a/k/a JODIE JOE, (collectively, "Plaintiffs"), file this Complaint against PURE PASSION INC. SPORTS BAR, d/b/a PURE PASSION and RANDY WILLIAMS (collectively, "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip club, Pure Passion located at 1849 E Brooks Rd, Memphis, Tennessee 38116 (**hereinafter referred to as the "Strip Club" or "Pure Passion"**).

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act"; d) Common Law Right of Publicity; e) Violation of the Tennessee Consumer Protection Act

1

of 1977, T.C.A. 47-18-101 to 47-18-570; f) Defamation; g) Negligence/Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant PURE PASSION INC. SPORTS BAR, is a corporation formed under the laws of the state of Tennessee, with its principal place of business located at 1849 E Brooks RD, Memphis, Tennessee, 38116. Upon information and belief, PURE PASSION INC. SPORTS BAR operates Pure Passion, which is located at 1849 E Brooks Rd, Memphis, Tennessee 38116..

8.      According to publicly available records, Defendant Randy Williams, is an individual operating under the laws of Tennessee, who is an Owner and/or CEO of PURE PASSION INC. SPORTS BAR. Upon information and belief, Randy Williams can be located at or 1849 E Brooks RD, Memphis, Tennessee 38116.

9.      Venue is proper in the United States District Court for the Western District of Tennessee because Defendants' principal place of business is located in Shelby County, Tennessee.

10.      A significant portion of the alleged causes of action arose and accrued in Memphis, Tennessee and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Memphis, Tennessee.

## PARTIES

*Plaintiffs*

11.     Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

12.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13.     Plaintiff Iesha Marie Crespo ("Crespo") is a well-known professional model, and a resident of Miami-Dade County, Florida.

14.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Zelia Milan ("Milan") is a well-known professional model, and a resident of Providence County, Rhode Island.

16.     Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

17.     Defendant, PURE PASSION INC. SPORTS BAR, is a corporation formed under the laws of the state of Tennessee and registered to conduct business in Tennessee. During times relevant to this action, PURE PASSION INC. SPORTS BAR operated Pure Passion.

18.      According to publicly available records, Randy Williams, in their capacity as principal, owner and/or CEO of PURE PASSION INC. SPORTS BAR, maintained operational control over Pure Passion, including all advertising relating thereto.

19.     Service of process may be perfected upon Defendant PURE PASSION INC. SPORTS BAR by serving the registered agent for service of process, Derek Little, who can be located at 1005 E Brooks Rd, Memphis, TN 38116.

## FACTUAL ALLEGATIONS

20.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of

advertising products and services.

21.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

23.    In the case of each Plaintiff, this apparent claim was false.

24.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

25.    No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

26.    Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

27.    Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

28.    That we know of, Geiger is depicted in the photo in Exhibit "A" to promote Pure

Passion on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Geiger was either an employee working at Pure Passion, that she endorsed Pure Passion, or that she was otherwise associated or affiliated with Pure Passion.

29.     Geiger has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter). [1]

31.     That we know of, Sampedro is depicted in the photo in Exhibit "B" to promote Pure Passion on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Pure Passion, that she endorsed Pure Passion, or that she was otherwise associated or affiliated with Pure Passion.

32.     Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such as Rick Ross and French Montana.

34.    That we know of, Crespo is depicted in the photo in Exhibit "C" to promote Pure Passion on its Facebook page. This Image was intentionally altered to make it appear that Crespo was either an employee working at Pure Passion, that she endorsed Pure Passion, or that she was otherwise associated or affiliated with Pure Passion.

35.    Crespo has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.    Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,600 Twitter followers.

37.    That we know of, Acosta is depicted in the photo in Exhibit "D" to promote Pure Passion on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Pure Passion, that she endorsed Pure Passion, or that she was

otherwise associated or affiliated with Pure Passion.

38.    Acosta has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.    Milan was born and raised in Newport, Rhode Island. The Sicilian and Azorian model is not only strikingly beautiful, but a driven humanitarian who has dedicated time to volunteering and guest speaking to bring awareness to the youth in state care. Ms. Milan possesses three degrees which include a bachelors in the Arts and a Masters in Social Work. Ms. Milan is currently shooting for various publication and has appeared on a number of covers. Ms. Milan has starred in some of music's top artist videos in the industry today. Ms. Milan although an accomplished model and businesswoman has turned her focus to acting and has a number of offers for feature roles in film. Ms. Milan social media footprint is growing rapidly with now close to 200,000 Instagram followers in the last six months.

40.    That we know of, Milan is depicted in the photo in Exhibit "E" to promote Pure Passion on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Milan was either an employee working at Pure Passion, that she endorsed Pure Passion, or that she was otherwise associated or affiliated with Pure Passion.

41.    Milan has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.    Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA

fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry.

43.    That we know of, Yemane is depicted in the photo in Exhibit "F" to promote Pure Passion on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Yemane was either an employee working at Pure Passion, that she endorsed Pure Passion, or that she was otherwise associated or affiliated with Pure Passion.

44.    Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

45.    Defendants operate (or operated, during the relevant time period,) a so-called Gentlemen's Club, where they are (or were) engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

46.    Defendants own, operate, and control Pure Passion's social media accounts, including its Facebook, Twitter, and Instagram accounts.

47.    Defendants used Pure Passion's Facebook, Twitter, and Instagram accounts to promote Pure Passion's , and to attract patrons.

48.    Defendants did this for their own commercial and financial benefit.

49.    Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Pure Passion, endorsed Pure Passion, or was otherwise associated or affiliated with Pure Passion.

50.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Pure Passion to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business

revenue, profits, proceeds, and income.

51.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Pure Passion, and at no point have any of the Plaintiffs ever endorsed Pure Passion or otherwise been affiliated or associated with Pure Passion.

52.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

53.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

54.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

55.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

56.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

57.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

58.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Pure Passion.

59.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed

relating to the commercialization of their Images.

60.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Pure Passion.

61.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

62.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

63.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Pure Passion's website, Twitter, Facebook, or Instagram accounts.

64.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

65.    Upon information and belief, the above acts of the Defendants were fraudulent, intentional and/or malicious and entitle Plaintiffs to punitive damages.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)

66.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

67.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein.

68.    Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment, or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

69.    Thus, this was done in furtherance of Defendants' commercial benefit.

70.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggests the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

71.     Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

72.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

73.     Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

74.     Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

75.     Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

76.     Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

77.     As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

78.     Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

79.     Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

80.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)

81.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

82.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

83.     Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

84.     Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

85.     Defendants' unauthorized use of Plaintiffs'' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

86.     Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant establishment events or activities, or consented to or authorized Defendants' usage of their image

in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

87.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendant establishment events and activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

88.    Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

89.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

90.    Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

91.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

92.    Defendants' wrongful conduct as described herein was willful.

93.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

94.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with

actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

95.     The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

96.     Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

97.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act")**

98.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

99.     Each Plaintiff has identified herself in each of Plaintiffs' Images as set forth in the exhibits attached to this complaint and each Plaintiff alleges upon information and belief that her image is readily identifiable in each photograph.

100.     Plaintiffs' Images have not been copyrighted under federal law.

101.     Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act" the unauthorized use of a person's image or likeness for purposes of advertising goods or services or fundraising/soliciting donations, among other purposes is unlawful.

102.     Defendants misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

103.    Defendants' use and publication of Plaintiffs' Images as set forth in the exhibits attached to this complaint was to advertise their establishment was for the purpose of advertising goods or services.

104.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

105.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

106.    Defendants published, performed, distributed, transmitted or otherwise made available to the public each Plaintiffs' image and likeness with knowledge that the use was unauthorized.

107.    Defendants knew or reasonably should have known that the use of Plaintiffs' Images was unauthorized.

108.    Defendants' use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value or for purposes of comment, criticism, scholarship, satire, or parody.

109.    Defendants never obtained Plaintiffs' consent for the use of their images and likenesses.

110.    Defendants' use of each Plaintiffs' photographs and likenesses was willful and deliberate.

111.    As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

112.    As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

113.    Under the Elvis Act, Plaintiffs are entitled to injunctive relief, destruction of any materials created in violation of the law; actual damages, plus any profits that are attributable to the violation.

**(Common Law Right of Publicity)**

114.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

115.    Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

116.    Defendants misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

117.    Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

118.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

119.    Plaintiffs are  further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

120.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

121.    Upon information and belief, Defendants' use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendants.

122.    At no point did any Defendant ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

123.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

124.    At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their image and likeness.

125.    Plaintiffs have been damaged in amounts to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of the Tennessee Consumer Protection Act of 1977,**
**T.C.A. 47-18-101 to 47-18-570)**

126.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

127.    Defendants operated their website and social media accounts in order to promote Defendants' establishment, to attract clientele thereto, and to thereby generate revenue for Defendants.

128.    As such, Defendants' operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Tennessee.

129.    Defendants publication and use Plaintiffs' image and likeness was in a manner that Plaintiffs gave consent for the use of their Images, and/or created the false impression that Plaintiffs were either strippers working at Defendants' establishment, endorsed the same, or were otherwise affiliated, associated, or connected with Defendants.

130.    As such, Defendants' intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendants.

131.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Tennessee.

132.    Defendants' advertising practices offends the public policy of Tennessee insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

133.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

134.    Defendants advertising practices cause injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

135.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

136.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' image and likeness on their website and social media accounts, each of the Plaintiff's reputations was injured, and each of the Plaintiff's ability to market herself as a model was injured.

137.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Defamation)

138.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

139.    As detailed throughout this Complaint, Defendants have published and altered the image and likeness of Plaintiffs in order to promote their establishment to the general public and potential clientele.

140.    Defendants' publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

141.    None of these representations were true.

142.    In publishing Plaintiffs' Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants.

143.    Defendants were at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

144.    In the alternative, Defendants published the image and likeness of Plaintiffs with actual malice because they knew – or reasonably should have known – that  Plaintiffs were not employed by Defendants, had no affiliation with Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

145.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

146.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Tennessee law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendant's establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

147.    Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

148.    This is because any company or brand that sought to hire any of the Plaintiffs  as a company or brand representative would be less likely to do so upon learning that she was working

for or endorsing the business, an inference which Defendants' publication of the image and likeness support.

149.    Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because, insofar as said publication falsely portrays each of the Plaintiffs as Defendants' employee, it imputes unchastity to her.

150.    Defendants' publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Negligence/Respondeat Superior)

151.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

152.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

153.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

154.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

155.    Similarly, Defendants further owed a duty of care to Plaintiffs to ensure that their promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendants.

156.    Defendants breached their duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

157.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Tennessee law, were not violated. Defendants breached their duty of care to Plaintiffs by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

158.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

159.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

160.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

161.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

162.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their image and likeness for their own use and financial gain.

163.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

164.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

165.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Defendants' establishment to the general public and potential clientele.

166.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendants.

167.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

168.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

169.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishment.

170.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

171.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

172.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

173.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

174.    Companies and brands that choose to hire Plaintiffs compensate them for their

appearances.

175.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at or endorse their establishment, or are otherwise affiliated with their establishment, Defendants have not compensated Plaintiffs.

176.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Defendants' Strip Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and T.C.A 47-18-101, *et seq.*;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and T.C.A 47-18-101, *et seq*.;

(e) For all damages available to Plaintiffs under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 ("TRPA" or "ELVIS Act");

(f) For all damages available to Plaintiffs under Tennessee Consumer Protection Act of 1977,T.C.A. 47-18-101 to 47-18-570;

(g) For such other and further relief as the Court may deem just and proper.

Respectfully submitted,


**/s/ Joe Bednarz, Jr.**
**JOE BEDNARZ, JR., #018540**
**BEDNARZ & BEDNARZ**
660 East Main Street
Hendersonville, TN 37075
(615) 256-0100
*Attorney for Plaintiffs*